**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 00-40048
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO ANTONIO GARAY,
also known as
Rodolfo Foskin

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____
December 7, 2000

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Rodolfo Antonio Garay ("Garay") challenges the sentence imposed by the district court after his conviction for being an alien unlawfully found in the United States following deportation, in violation of 8 U.S.C. § 1326(a) and 1326(b). The district court denied Garay's request for a downward departure from the Sentencing Guidelines on the ground that Garay's status as a deportable alien did not constitute a basis for departure. Agreeing with the district court that alienage is not a basis for downward departure in this immigration case, we affirm.

*Facts and Proceedings*

Garay was convicted following a bench trial for being an alien unlawfully found in the United States after deportation.[1]  In his objections to the presentence investigation report, Garay urged the district court to depart downward from the Sentencing Guidelines because "he is an alien and will be deported."  Garay also contended that he merited a downward departure because as an alien, he would face more severe conditions of incarceration because of his ineligibility for Bureau of Prisons programs such as drug and alcohol treatment, prison camp, and release to a halfway house.

Garay pressed his request for downward departure again at the sentencing hearing.  The district court denied the request, stating that there was nothing atypical about Garay's case that would take it outside the "heartland" of immigration cases to which the guideline applied.[2]  When counsel for Garay inquired as to whether Garay's request was denied "on the basis that alienage does not constitute a probable basis for downward departure," the district court answered in the affirmative.  The district court proceeded to

---

[1]See 8 U.S.C. § 1326(a) and 1326(b).

[2]The Guidelines explain that "[t]he Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guidelines described.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where the conduct differs significantly from the norm, the court may consider whether a departure is warranted."  See 1995 U.S.S.G. ch. 1, pt. 1, intro. comment. 4(b).

sentence Garay to 70 months of imprisonment,[3] together with a three-year term of supervised release and a $100 special assessment. Garay timely appeals the sentence imposed by the district court, and asks us to vacate his sentence and remand for resentencing.

## II.

### *Analysis*

#### A. *Standard of Review*

A defendant's general dissatisfaction with his sentencing range provides no ground for review of a district court's refusal to grant a downward departure.[4] We have jurisdiction only if the refusal was in violation of the law.[5] A refusal to depart downward is a violation of the law only if the district court's refusal is based on the mistaken belief that the court lacked discretion to depart.[6] We review a district court's decision not to depart from the Guidelines for abuse of discretion.[7]

#### B. *Issues*

Garay contends that his sentence must be vacated because the district court erroneously believed that it lacked authority to

---

[3]Garay's prison term was at the low end of the applicable Sentencing Guidelines range of 70-87 months.

[4]United States v. DiMarco, 46 F.3d 476, 477 (5th Cir. 1995).

[5]Id.

[6]United States v. Burleson, 22 F.3d 93, 95 (5th Cir. 1994).

[7]Koon v. United States, 518 U.S. 81, 98-100 (1996).

depart downward on the basis of his status as a deportable alien.[8]

He concedes that this argument is foreclosed by our decision in

United States v. Nnanna,[9] in which we held that, in the case of a

deportable alien convicted of bank fraud, "[c]ollateral

consequences, such as the likelihood of deportation or

ineligibility for more lenient conditions of imprisonment, that an

alien may incur following a federal conviction are not a basis for

downward departure."[10]  Garay argues, however, that Nnanna must be

reconsidered in light of the Supreme Court's subsequent decision in

Koon v. United States,[11] which held that federal courts can no

---

[8]A district court may depart from the applicable Sentencing Guideline range only if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b).  The Guidelines enumerate certain factors that can never be bases for departure, such as race and religion, but do not otherwise limit, as a categorical matter, potential bases for departures.  See Koon, 518 U.S. at 94; see also 1995 U.S.S.G. § 5H10 (prohibiting consideration of race, sex, national origin, creed, religion, and socio-economic status).

If a basis for departure, such as alienage, is not mentioned in the Guidelines, a district court must, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland."  See Koon, 518 U.S. at 94 (quotations and citation omitted).  The Commission has advised that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."  See 1995 U.S.S.G. ch. 1, pt. A, p.6.

[9]7 F.3d 420 (5th Cir. 1993).

[10]Id. at 422.

[11]518 U.S. 81 (1996).

4

longer categorically proscribe a basis for departure unless the Guidelines have explicitly forbidden consideration of that factor.[12]

Consequently, Garay maintains that in light of <u>Koon</u>, our decision in <u>Nnanna</u>, which categorically proscribed alienage and its attendant consequences as a basis for downward departure, is no longer good law. Garay does not argue that his case is "atypical" or that the district court's refusal to depart downward was otherwise in violation of the law. Rather, he argues that his sentence should be vacated and remanded for reconsideration in light of <u>Koon</u>'s directive that any factor not mentioned in the Guidelines can serve as a potential basis for departure.

Garay relies on decisions from other circuits in asserting that <u>Koon</u> requires us to instruct the district court to consider his alienage as a basis for downward departure on remand.[13] But these cases, which involved aliens convicted of crimes other than immigration offenses,[14] are clearly distinguishable from the instant

---

[12]<u>Id.</u> at 109 (1996).

[13]<u>See</u> <u>United States v. DeBeir</u>, 186 F.3d 561, 69 (4th Cir. 1999) ("Although the Guidelines prohibit reliance on national origin . . . they do not mention alienage as a departure factor; it therefore serves as a potential basis for departure") (citation omitted); <u>United States v. Farouil</u>, 14 F.3d 838, 847 (7th Cir. 1997) (same); <u>see</u> <u>also</u> <u>United States v. Smith</u>, 27 F.3d 649, 655 (D.C. Cir. 1994)(holding, prior to <u>Koon</u>, that downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause a "fortuitous increase" in the severity of his incarceration).

[14]DeBeir was convicted of traveling in interstate commerce with the intent to engage in a sexual act with a minor; Farouil was convicted for knowingly importing heroin into the United States.

case, in which Garay's status as a deportable alien, as an inherent element of his crime, has already been considered by the Commission in formulating the applicable guideline.[15]

For example, in <u>Farouil</u>, the Seventh Circuit concluded that alienage could serve as a basis for departure in Farouil's drug case, but nevertheless affirmed its decision one week earlier in <u>United States v. Gonzalez-Portillo</u>[16] that alienage is not a basis for departure in § 1326 cases.[17] In <u>Gonzalez-Portillo</u>, the Seventh Circuit reasoned that because deportable alien status is an element of the crime to which the guideline applies, alienage was necessarily "taken into consideration by the Sentencing Commission in formulating the guideline."[18] The Seventh Circuit concluded that

_____

[15]As the Ninth Circuit reasoned in <u>United States v. Martinez-Ramos</u>, 184 F.3d 1055, 1058 (9th Cir. 1999), all defendants found guilty of violating § 1326 will be deportable aliens, subject to the same sentencing constraints that apply to all other defendants found guilty of violating the same statute. Thus, insofar as sentencing for violations of § 1326 is concerned, there is "not even an arguable 'need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" <u>Id.</u> (quoting 18 U.S.C. § 3553(a)(6)).

[16]121 F.3d 1122 (7th Cir. 1997).

[17]<u>Farouil</u>, 124 F.3d at 846.

[18]121 F.3d at 1124-25 (quotations and citation omitted). To the extent that <u>Nnanna</u> categorically proscribed alienage and its attendant consequences as a basis for downward departure, Garay's assessment of its limited precedential value in the wake of <u>Koon</u> is correct. <u>Nnanna</u>, however, does not control the instant case. <u>Nnanna</u> involved an offense (bank fraud) in which the defendant's status as a deportable alien was irrelevant, whereas Garay was convicted of an immigration offense in which his status as a deportable alien was part and parcel of his crime.

6

even under <u>Koon</u>, "a factor that may otherwise justify a departure will not do so when, as here, it is already accounted for in the applicable guideline."[19]

The Government, adjudging the rationale in <u>Gonzalez-Portillo</u> to be sound, urges us to follow the Sixth, Seventh, and Ninth Circuits in deeming alienage an impermissible basis for departure when, as here, status as a deportable alien has necessarily been taken into account by the Sentencing Commission in establishing the offense level for the crime. We agree and hold that Garay's status as a deportable alien, as an element of the crime for which he was sentenced, is not an "aggravating or mitigating circumstance of a kind or degree not adequately taken into consideration by the Commission"[20] and therefore is not a permissible basis for downward departure in this immigration case.

III.

*Conclusion*

For the reasons explained above, the district court was correct in refusing to depart downward from the Sentencing

---

[19]<u>Id.</u>; <u>see</u> <u>also</u> <u>Martinez-Ramos</u>, 184 F.3d at 1056 (holding that status as a deportable alien cannot be a ground for downward departure when deportable alien status is an element of the crime that was necessarily taken into account by the Sentencing Commission in crafting the offense level for the violation); <u>United States v. Ebolum</u>, 72 F.3d 35, 38 (6th Cir. 1995) (holding that when all of the crimes to which the guideline applies may be committed only by aliens, most of whom, if not all, are deportable, courts may assume that the Sentencing Commission took deportable alien status into account when formulating the guideline).

[20]<u>See</u> 18 U.S.C. § 3553(b).

Guidelines on the basis of Garay's alienage.  Consequently, his

sentence is

AFFIRMED.

S:\OPINIONS\PUB\00\00-40048.CR0
4/28/04  8:09 am