# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2022

Lyle W. Cayce
Clerk

No. 21-10659

United States of America,

*Plaintiff—Appellee*,

*versus*

Fernando Valdez-Cejas,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CR-332-1

Before Stewart, Elrod, and Graves, *Circuit Judges*.

Per Curiam:*

Fernando Valdez-Cejas appeals the district court's judgment imposing a within-guidelines sentence of 87 months of imprisonment following his guilty-plea conviction for being unlawfully present in the United States for the fourth time after being removed. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10659

## I. FACTUAL & PROCEDURAL BACKGROUND

In February 2021, Valdez-Cejas pled guilty to being found unlawfully present in the United States following a prior removal in violation of 8 U.S.C. § 1326. When law enforcement officials encountered him in October 2020, he admitted that he was removed to Mexico in February 2020 and that he was in the United States without permission. The Presentence Investigation Report ("PSR") reflected that he had been sentenced in 2017 to 40 months in prison for illegal reentry following removal. His February 2020 removal was his fourth, and it took place just days after he was released from the custody of the Bureau of Prisons on the 2017 illegal-reentry case. His 2017 illegal-reentry conviction received three criminal history points pursuant to U.S.S.G. § 4A1.1(a). *See* U.S.S.G. § 4A1.1(a) (assigning three points for a prior prison sentence exceeding 13 months). It also increased his offense level by four levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A). With a total offense level of 20 and his placement in Criminal History Category VI, Valdez-Cejas was subject to a within-guidelines imprisonment range of 70 to 87 months.

Valdez-Cejas objected to the PSR because his 2017 conviction for illegal reentry was used both to increase his offense level and to increase his criminal history score. He argued that this resulted in his prior conviction being double counted for purposes of determining his advisory guidelines range. The district court overruled the objection and sentenced him to 87 months of imprisonment to be followed by a three-year term of supervised release. Valdez-Cejas filed this appeal, arguing for the first time that the application of U.S.S.G. § 2L1.2(b)(1)(A) to alien defendants, like himself, violates his right to equal protection.

## II. STANDARD OF REVIEW

Valdez-Cejas did not challenge his sentence on equal-protection grounds to the district court so we review the issue for plain error only. *See*

2

*United States v. Martinez*, 496 F.3d 387, 389 (5th Cir. 2007) (reviewing for-feited constitutional error in the sentencing context for plain error). To show plain error, he must establish an error that was clear or obvious and that af-fected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, this court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public repu-tation of judicial proceedings. *Id.*

## III. Discussion

"The essence of an equal protection claim is that other persons simi-larly situated as is the claimant unfairly enjoy benefits that he does not or es-cape burdens to which he is subjected." *United States v. Cronn*, 717 F.2d 164, 169 (5th Cir. 1983). In *United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1131, 1134 (5th Cir. 1993), this court considered a direct criminal appeal in a § 1326 case that involved an enhancement under § 2L1.2. Cardenas-Alvarez argued that the § 2L1.2 enhancement's disproportionate effect on his sentence cre-ated an equal-protection violation. *Id.* at 1133–34. This court rejected the equal-protection challenge reasoning that "[t]he Supreme Court has upheld the constitutionality of the guidelines" which "were devised to and do treat [equally] all persons" who violate § 1326 and qualify for § 2L1.2 enhance-ments. *Id.* at 1134 ("In challenging his sentence, Cardenas raises essentially an equal protection argument. However, the guidelines were devised to and do treat all persons with aggravated felonies who commit this crime equally."); *accord United States v. Martinez*, 477 F. App'x 248, 250 (5th Cir. 2012) (per curiam) (unpublished) ("The application of the 16–level enhance-ment does not violate equal protection because it treats equally all persons with qualifying serious prior offenses who commit an illegal reentry of-fense.").

No. 21-10659

Valdez-Cejas acknowledges our holding in *Cardenas-Alvarez* but argues that *Cardenas-Alvarez* compared the treatment of the various aliens who were subject to the double-counting caused by § 2L1.2 enhancements based on prior convictions. According to Valdez-Cejas, the "correct class comparison is between aliens who are subjected to double counting of prior convictions in guideline calculations and United States citizens who are not subjected to the double counting of prior convictions in the calculation of their guideline range." We disagree. Given the *Cardenas-Alvarez* panel's equal-protection holding and the lack of any published authority supporting Valdez-Cejas's argument, he cannot show that the district court plainly erred by applying the § 2L1.2 enhancement here.[1] *See Puckett*, 556 U.S. at 135; *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010).[2]

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[1] The Eleventh Circuit has considered and rejected an argument that different § 2L1.2 enhancements make an irrational distinction between aliens with prior felony convictions and citizens with prior felony convictions for equal-protection purposes. *See United States v. Osorto*, 995 F.3d 801, 820–22 (11th Cir.), *cert. denied*, 142 S. Ct. 470 (2021). That court held that "the group of individuals arguably discriminated against by [§ 2L1.2's] double-counting is not all noncitizens; it is the smaller subset of noncitizens who are unlawfully present in the United States and have committed at least one other qualifying violation." *Osorto*, 995 F.3d at 820 (citing *Cardenas-Alvarez*, 987 F.2d at 1134).

[2] We also reject Valdez-Cejas's ancillary argument that § 2L1.2(b)(1)(A) violates Congress's directive at 28 U.S.C. § 994(d) that the Sentencing Commission is prohibited from considering national origin in promulgating the Guidelines. This court has held that "'alienage' and 'national origin' are not synonymous." *United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993); *see also Osorto*, 995 F.3d at 822 (rejecting argument similar to that raised by Valdez-Cejas and explaining that alienage means not being a United States citizen, while national origin pertains to a person's country of birth).